THE PORTLAND, SACO & PORTSMOUTH RAILROAD COMPANY in equity,

*vs.*

THE GRAND TRUNK RY. Co., and the AT. & ST. L. R. R. Co.

*Contract—construction of—when equity will decree performance of residue of one partly abandoned.*

The stipulation for the erection of a central passenger station found in the contract of April 23d, 1850, between the plaintiffs and the Atlantic & St. Lawrence Railroad Company has been abandoned by mutual consent.

All the other work contemplated in the contract having been performed with the exception of this item, and this being abandoned, the plaintiffs have the same rights in the works actually constructed at the joint expense, and the same right to an irrevocable lease of the western portion of the tracks laid down in pursuance of the contract, as they would have had if the proposed central depot had been constructed within a reasonable time.

The territorial division of the tracks heretofore made for the purpose of repairs indicates the part to be leased.

Until such lease is made the plaintiffs have a right in common to the use and occupancy of the tracks throughout, for the purpose of transporting and delivering at any point between the original termini of the roads, as they existed on April 23d, 1850, all freight and cars which they are hauling in pursuit of their business as common carriers, whether their own cars or the cars of connecting roads, and whether they receive them at their general station in Portland or elsewhere.

After such lease both parties shall enjoy their rights in that portion of their new tracks which is in the possession and under the immediate control of the other party, under such rules and regulations as may be mutually beneficial.

The non-fulfilment by mutual consent of one item in a contract embracing the performance of several pieces of work, will not defeat the right of a party who is not in default to require a substantial performance of the remainder of the contract, when such non-fulfilment does not affect the essential rights and interests of the contracting parties with regard to those parts of the work which are actually performed.

BILL IN EQUITY.

After stating the corporate existence of the parties and the lease of the property of the Atlantic & St. Lawrence Railroad Company, to the Grand Trunk Railway Company, which thereby succeeded to all the rights, duties, obligations and agreements of its lessor, the bill proceeds to recite that a contract was made, April 23, 1850, between the complainants and the Atlantic & St. Lawrence Railroad Company, relative to the construction of Commercial street and a sea-wall along the water-front of that street, which said last named corporation had contracted to build by arrangement with the city of Portland; by which agreement between these railroad companies this work was to be done at their joint expense, and they were also to unite in building a central depot for their equal use and benefit at some point on Commercial street, nearly midway of the same as built by them. In consideration of the plaintiffs bearing one-half of this expense it was agreed that they should have, from the Atlantic & St. Lawrence Railroad Company, an irrevocable lease of all that portion of the railroad and tracks lying westerly of the proposed union depot, and that this (westerly) part should be conveyed absolutely to the

complainants whenever they should be authorized to extend their road to this central station; and until the erection of this building, were to have the right, equally with the other road, to use and occupy the railroad and tracks so built at their joint expense; and both parties were to be "at full liberty to deliver their freight at any point between the termini of the now existing depots of the two roads free of charge, but each party shall control the portion of the road which may be constructed between their present depots and the proposed central depot, and establish such rules as may be mutually beneficial." The sea-wall, street and tracks were built and laid down at joint expense of the parties, as contemplated and provided by this contract of April 23, 1850, but the central depot never was erected, but this project was abandoned, and the contract in this respect (but not otherwise) modified; nor was any lease to the complainants, of any part of this Commercial street track ever executed; but the parties, including the Grand Trunk Railway, since it succeeded to the rights and obligations of the Atlantic & St. Lawrence Railroad Company have used this track as authorized and specified in this agreement, till the summer of 1872, when the Grand Trunk Railway Company refused to allow the complainants the free and unobstructed use of said tracks which they had enjoyed for more than twenty years, under the arrangement aforesaid. The bill was filed July 24, 1872, and prayed for a perpetual injunction to restrain the respondents from any interference with the complainants' use and occupancy of this track upon Commercial street under said contract, and that the defendants be ordered and required to give the irrevocable lease therein mentioned. The answers admitted the contract, but denied that it had ever been modified at all, and claimed that the Portland, Saco & Portsmouth Railroad Company had no right under it to draw along Commercial street cars belonging to roads that delivered them to that corporation at or near its station in Portland—evidently meaning to deny its right so to haul the cars of the Maine Central Railroad Company.

*Nathan Webb,* for the complainants.

*J. & E. M. Rand,* for the respondents.

BARROWS, J. The plaintiffs, on the twenty-third of April, 1850, entered into a written contract with the Atlantic & St. Lawrence Railroad Company one of the respondents here, lessor of the other respondent which operates and uses the railroad and property of the said Atlantic & St. Lawrence Railroad Company, and stands in their place and stead, as far as regards the fulfilment of many of their agreements, obligations and duties. Said written contract provides for the construction, at the joint and equal expense of the contracting parties, of a sea-wall and street, in pursuance of an agreement between the Atlantic & St. Lawrence Railroad Company and the city of Portland—for the erection at their joint expense of a suitable passenger depot for the accommodation and use of their respective roads, and for the purchase of such land and flats as might be necessary for such depot at some suitable location between their then existing depots—for the immediate connection of the depots then in use by a temporary track on piles—and, generally, for the performance of the contract between the Atlantic & St. Lawrence Railroad Company and the city of Portland at the joint and equal expense of these contracting parties.

Hereupon the Atlantic & St. Lawrence Railroad Company covenanted with the plaintiffs to lay out and extend the location of their line from their depot at the foot of India street to the plaintiffs' depot in Canal street, and to make an irrevocable lease of their interest in the railway to be laid down westerly of the proposed central depot and between that and the plaintiffs' depot, and whenever the plaintiffs should obtain legislative authority to extend their line to said central depot, to convey all their right and interest in the portion thus agreed to be leased, to the plaintiffs, —"and until the erection of said central depot, the said company of the first part (A. & St. L. R. R. Co.,) hereby agrees to grant to said company of the second part (the plaintiffs) the use and occupation of said track or tracks which may be laid down between and to connect the present depots of said parties."

Here follow provisions for the laying down of said track or tracks at the joint and equal expense of the parties and other provisions as to the mode in which the temporary track above referred to, should be used and operated, and stipulations with regard to the amount of the payments to be required of the plaintiffs in carrying out the object of the agreement, and the manner in which such payments should be made, and then the material portion of the contract closes thus—"On the completion of the whole work aforesaid the parties respectively shall run their passenger trains to the central depot, and shall be at full liberty to deliver their freight at any point or points between the termini of the now existing depots of the two roads free of charge, but each party shall control the portion of the road which may be constructed between their present depots and the proposed central depot, and establish such rules as may be mutually beneficial."

The contemplated sea-wall and street were constructed, the tracks connecting the depots of the contracting companies were laid, and the plaintiffs paid their part of the expense thereof in accordance with the terms of the contract; and upon the completion thereof began to use the tracks as contemplated in the contract, distributing freight from their own cars and those of connecting roads at the various wharves and along the street.

No difficulty appears to have arisen between the contracting parties respecting the use of the road until recently. The proposed central depot has never been built, nor any land or flats purchased for it, nor has either party during all the time which has elapsed since the agreement was entered into, called upon the other to take any steps towards the fulfilment of this portion of the agreement.

Now the plaintiffs allege that the erection of this central depot was by mutual consent abandoned, but that the written agreement between the parties has not been in any other respect modified; and they claim in this bill that the court should require of the respondents a specific performance of the provisions of the contract which remain to be performed on their part, and a perpetual in-

junction against any interference with the business of the plaintiffs over the tracks which were laid down at the joint expense of both companies in accordance with the contract.

The respondents deny that the erection of the central depot has been abandoned, or that there has been any modification of the contract whatever; and they deny the right of the plaintiffs to draw the cars of any other railroad company over the tracks thus laid down at the joint expense; and say that they have never denied the right of the plaintiffs to draw their own cars over those tracks, nor in any manner obstructed them in so doing; and that this is all which they can lawfully claim to do, either under the contract or under any law of this State.

The only controverted question of fact, seems to be as to the alleged abandonment of the agreement so far as it relates to the erection of a central depot and the purchase of land and flats therefor. To determine this question rightly it seems to be necessary first to ascertain the true intent and meaning of the provisions touching this matter and the relation which they hold to the other portions of the contract. It cannot be doubted that the general object of the contract was to secure to both railroads the benefit to be derived from such an extension of their lines, as would enable them to transfer freight from one road to the other without the additional trouble, delay and expense of cartage, and also to enable both roads to deliver freight at any point along the whole waterfront of the city.

The Atlantic & St. Lawrence Railroad Company had the power to make a legal location of their line, which would enable them to appropriate to themselves the benefits thus accruing. But the undertaking even in those days involved a heavy outlay of money. It is evident that they were willing to share the privilege with the plaintiffs for the sake of securing their assistance in defraying the expense. Hence the contract in question, which seems to have been carefully drawn with a view to securing ultimately a substantially equal division between the railroad companies of the tracks to be laid down at their joint expense, and a separate own-

ership and control in each of that half of the new tracks which was contiguous to their previous respective termini, an ownership and control which was to be assured to the plaintiffs by an irrevocable lease from the Atlantic & St. Lawrence Railroad Company of the western portion of these tracks, and a conveyance of the whole right and interest of the Atlantic & St. Lawrence Railroad Company in said western portion whenever the plaintiffs should obtain authority from the legislature to extend their line to the proposed central depot which was to be the point of division.

Thereafterwards each of the contracting parties was to own and control that portion of the track which lay between said central depot and the previous terminus of its road; but each was to be at liberty to deliver its freight at any point or points upon the new tracks between their original termini free of charge, and the companies were to establish such rules as might be mutually beneficial. Until the erection of the proposed central depot the plaintiffs were to have the use and occupancy of the new tracks throughout. It is alleged in the bill, and not denied in the answer, that the plaintiffs paid their proportion of the expense to the full amount agreed upon. No reason appears to excuse the respondents from a full and specific performance of their portion of the agreement, according to its terms, tenor and effect, unless it has been modified by the subsequent consent of the contracting parties, and in conformity with their present equitable rights if such modification has been made.

It is obvious that the agreement was designed by the parties to it to be the basis of immediate action. They entered at once upon the fulfilment of it. No time being fixed within which specific portions of the agreement were to be performed, according to a well settled rule it is to be presumed that a reasonable time was intended. Both parties contracted in view of the condition of things then existing. They may be supposed to have had in mind the ordinary prices of land, flats, building materials, work and labor, then and there, and also the prices for which they might be procured within a reasonable time thereafter for the fulfilment of their contract.

When this process in equity was commenced, more than twenty years had elapsed after the execution of the contract. A reasonable time for the performance of the stipulations respecting the purchase of lands and flats and the erection of a central depot, if that part of the contract was ever intended to be carried out, had long gone by. If either party designed to call upon the other to perform in this respect, it should have been done before all the circumstances had changed to the extent that they must almost necessarily have done during this long period. Not long after the general fulfilment of what may be supposed to be the main object of the contract, i. e., the actual physical connection of the two roads by means of tracks laid along the street which was to be constructed in pursuance of the agreement of the Atlantic and St. Lawrence Railroad Company with the city of Portland, which makes part of the case, the respondents proceeded to erect a permanent and expensive passenger station at the foot of India street.

If these plaintiffs were under obligation to share in the expense of the erection of the proposed central depot, it would be manifestly inequitable in them to lie by, and permit the respondents thus to change their condition without interposing a reminder of the obligations under which they rested by virtue of this contract. It would be equally so for either party, after allowing the matter to slumber for almost a quarter of a century, to attempt now to impose upon the other the greatly increased expense of a fulfilment of the stipulation, so much beyond what could have been contemplated by the parties at the time the contract was executed. The respondents make no such idle proposition. They do not even suggest that they desire or design to incur any such expenditure on their own part. They only deny that the contract has been modified in this particular by mutual consent. We think that denial is controlled and surmounted by the undisputed facts in the case, the great lapse of time during which neither party has made any step towards the execution of the work, or any complaint that it is not done, and the erection by the respondents of a large and permanent passenger station at their old terminus. The only

reasonable conclusion from these facts seems to be that the contracting parties had come to an understanding, that the completion of this portion of the contemplated work was not to be insisted on. We think there is unequivocal proof of the abandonment by mutual consent, of this part of the contemplated work.

Nor do we think that this modification is of such a character as to relieve the respondents from the fulfilment of the other stipulations remaining to be performed on their part.

The uncontradicted testimony with respect to the territorial division of the new tracks so far as relates to repairs, the plaintiffs having charge of that portion extending from their station to Union street, and the Grand Trunk Company of the remainder, each company bearing the expenses of the repairs of its particular portion according to this division whether more or less, and the testimony showing the adoption of mutually beneficial regulations with regard to the delivery of freight along the whole line by the parties respectively, and the assignment of particular hours to each road for that purpose and the undisputed fact that the territorial division above referred to has existed certainly for more than ten years, (how much longer does not appear) suffice to satisfy us that neither of the parties ever looked upon the abandonment of the project of a central depot as affecting, or liable to affect, the rights of the parties in other respects and that they have for a long time looked upon the work to be done under the contract as substantially completed.

And they seem to us to stand (this project being treated as abandoned by mutual consent) precisely upon the same footing as they would "on the completion of the work." The work was completed save in that one particular, and that part has been abandoned by mutual consent. This, at least, is certain, that each party has so long neglected to call upon the other to perform this part of the work contemplated in the contract, that neither would have the right, under the great change of circumstances in all respects, to insist upon it now.

And herein we think the case differs from those in which the

courts have said that they will not order the specific performance of a contract which has been varied by parol. It rather resembles those of partial non-performance of a written contract without default of the plaintiff. It bears little or no likeness to those cases where a stipulation or variation superadded by parol makes an essential change of the effect of the contract in other respects, so as to give color to the remark that "the contract is not in the writing, but in the terms which are verbally stated to have been the agreement between the parties." What we mean to hold is that when the variation from the written contract asserted by a plaintiff seeking a specific performance by the other party, consists in an omission by mutual consent to perform some particular stipulation for such a length of time that neither would have the right to call upon the other to perform it, and the non-performance of that particular stipulation does not appear to have affected the essential rights or interests of the parties to the contract in other respects, such omission or variation will not defeat the rights of the party, (whose performance of the contract has been otherwise complete,) to a decree.

We cannot overlook the fact that the principal and essential matter here was the construction of the sea-wall and street, and the laying of the tracks by which the two railroads were to be connected. The erection of a central passenger station was but a mere incident, and after this lapse of time its non-completion (for which the plaintiffs at least do not appear to have been in default) cannot affect their right to the lease and conveyance and use of the respondents' half of the track in substantial conformity with the stipulations of the agreement.

It is asserted in defence that this court with its limited equity powers has no jurisdiction.

The view which we have taken of the case places it clearly within the third specification of R. S., c. 77, § 5, where the equity jurisdiction of this court is defined. To compel the performance of written contracts is one of the powers expressly conferred.

Neither do we find in the case at bar any of the objections

which have induced courts to decline in some instances to compel the specific performance of contracts for the construction of railways and branches. This contract has been so far carried out by the parties themselves, as to eliminate objections that might in the outset have prevented us from interfering.

It remains for us to determine whether the respondents' construction of the right of use of the new tracks which was agreed to be granted to the plaintiffs (and which we take to be identical with the right which each company was to have in that portion of them which was to be owned and controlled by the other "on the completion of the whole work") can be sustained.

It is asserted by the respondents' counsel that under the contract this right was only to be exercised with the plaintiffs' own cars and possibly with those of connecting roads whose cars were turned on to the plaintiffs' road and drawn for a considerable distance over it before reaching its terminus.

We are satisfied that no such limitation attaches to the use. There is nothing in the terms of the contract to suggest it. There was nothing in the situation of the parties at the time the contract was entered into, or since—nothing in the business in which they were both engaged, nor in the modes of conducting that business, or in the sources from which it is derived, that would make such a limitation consistent with the apparent intent and design of the parties in this agreement. Both were common carriers of freight for hire, deriving more or less of their business from connecting roads, bound by law to transport what was properly tendered at their stations, whether by individuals or connecting railroad companies, owing duties to the public and every individual in it who might have occasion to avail himself of the facilities for transportation which they controlled. The freight which they receive to transport for hire, whether received of individuals or connecting railroad companies, is their freight and becomes part of their business; and whether it is transported in their own cars, or cars hired, or loaned, or furnished gratuitously by other companies, or in accordance with any system or custom of exchange prevailing

P. S. & P. R. R. Co. v. G. T. Ry. Co.

in the business, it makes no difference. *Pro hac vice,* so long as they use them in the prosecution of their business, the cars are their cars. Nor is it a matter of any importance what distance they have been hauled over the plaintiffs' road, or whether they are delivered to them at their station in Portland. The profit which the plaintiffs derive from the business may be in an inverse ratio to the distance.

We understand the respondents to admit that they prevented the plaintiffs from hauling freight over their tracks coming from roads which run into Portland on their own tracks, and only connect with the plaintiffs' railroad at or near their station in Portland. But when their freight and their cars are transferred to the plaintiffs to be moved for a consideration paid to the plaintiffs, the plaintiffs are in the exercise of their legitimate functions as common carriers in moving them from one point to another in pursuance of their contract. That is their business, for which they have a right to the use and occupancy of all parts of these new tracks, (built in part at their expense, between the original termini of the railroads) by force of this agreement in writing—a right which extends not only to the westerly portion which they control and keep in repair, but to the other part also under "such rules as may be mutually beneficial."

Against any interference with this right,

> *The plaintiffs are entitled to a perpetual injunction, and also to a decree as prayed for, with costs.*

APPLETON, C. J., WALTON, DICKERSON, DANFORTH and VIRGIN, JJ., concurred.